**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| PENN-AMERICA INSURANCE COMPANY, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | |
| MARCOS ZERTUCHE, | § § | |
| *Defendant, Third-Party Plaintiff, Counter-Plaintiff* | § § § | Civil Action No.  SA-09-CV-475-XR |
| v. | § § | |
| STOLTZ & COMPANY LTD. and TEXAS ALL RISK GENERAL AGENCY, INC., | § § § § | |
| *Third-Party Defendants.* | § § | |

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

On this day, the Court considered Plaintiff Penn-America's motion for summary judgment (Docket Entry No. 57), Third Party Defendant Stoltz & Company's motion for summary judgment (Docket Entry No. 54), and Third Party Defendant Texas All Risk General Agency's motion for summary judgment (Docket Entry No. 58).  Defendant Zertuche has not filed a motion for summary judgment on his claims.  Having considered the motions, all responses and replies thereto, the relevant authority, and the evidence, all three motions for summary judgment are GRANTED IN PART AND DENIED IN PART.

## Background

Penn-America issued Commercial Lines Policy Number PAC6449156, effective February 6, 2008 to February 6, 2009, to Marcos Zertuche. The Policy covered an apartment building at 502 San Pedro Avenue, San Antonio, Texas 78212. The Policy provided general liability insurance for the Property with limits of $1,000,000 per occurrence and $2,000,000 in the aggregate; property insurance for the Property with limits of $264,000 in building coverage on an actual cash value basis, subject to a $1,000 deductible; and business income coverage up to $40,000. Stoltz & Company was the agent that Zertuche used to find and obtain the Policy.

The premiums on the Policy were due on a monthly basis. Zertuche's check for the October 2008 premium was returned for insufficient funds. On October 9, 2008, Texas All Risk, on behalf of Penn-America, mailed a Notice of Cancellation to Zertuche, advising that the Policy would be cancelled effective October 20, 2008, for nonpayment of the premium. Texas All Risk, as the underwriter on the Policy, processed Zertuche's monthly premium payments.

On October 21, 2008, Zertuche's Secretary Lisette Briano called the 1-800 number listed on the TAR invoice regarding the possibility of reinstating the Policy. Briano was informed that the Policy would be reinstated if Zertuche sent a cashier's check for $259.45, along with a statement verifying no loss in the interim, by overnight mail. Zertuche followed the instructions and mailed the $259.49 check and no loss statement via UPS overnight courier service. TAR mailed a notice to Zertuche on October 23, 2008 indicating that it had applied the payment to the Policy, but that the Policy remained cancelled effective October 20, 2008. Zertuche apparently never received this letter. Zertuche did not make any premium payments in November or December of 2008.

On January 27, 2009, a fire destroyed the Property. Zertuche reported the Loss to Penn-

2

America on or about January 28, 2009.  Penn-America began conducting an investigation which ultimately concluded that the Policy had been cancelled for non-payment of premium.  On February 1, Zertuche received a refund check from Texas All Risk, dated January 29, 2009 for $399.11.

### Procedural History

On June 11, 2009, Plaintiff Penn-America Insurance Company ("Penn") filed a Complaint against Defendant Marcos Zertuche, seeking a declaratory judgment that (1) the Policy was cancelled effective October 20, 2008, and (2) Penn had no duty to indemnify Zertuche for any losses resulting from the fire.[1]  On October 1, 2009, Zertuche filed an Answer to Plaintiff's Complaint.[2]  On October 8, 2009, Zertuche filed a Counterclaim against Penn and Third Party Complaint against JSB Investment, Inc. d/b/a JSB-Stoltz Insurance Services. ("Stoltz") and Texas All Risk General Agency, Ltd ("TAR").  Zertuche's Third Party Complaint against Stoltz and TAR alleged negligence, violations of the Texas Insurance Code, violations of the Deceptive Trade Practices Act ("DTPA"), and sought attorney's fees.  His counterclaim against Penn alleged breach of contract, violations of the Texas Insurance Code and the DTPA, negligent supervision of its agents Stoltz and TAR, and vicarious liability for the acts of Stoltz and TAR.[3]  All parties subsequently amended their pleadings several times.[4]

---

[1]Penn's Orig. Compl., Jun. 11, 2009 (Docket Entry No. 1).

[2]Zertuche's Orig. Ans., Oct. 1, 2009 (Docket Entry No. 4).

[3]Zertuche's Countercl. and Third Party Compl., Oct. 8, 2009 (Docket Entry No. 7).

[4]The live pleadings in this case are: Penn's Am. Compl., Jul. 2, 2010 (Docket Entry No. 31); Zertuche's First Am. Ans., Jul. 15, 2010 (Docket Entry No. 41); Zertuche's First Am. Countercl. And Third Party Compl., Jul.14, 2010 (Docket Entry No. 32); Penn's Second Am. Ans., Jul. 23, 2010 (Docket Entry No. 42); Stoltz's Second Am. Ans., Jul. 28, 2010 (Docket Entry No. 46); and TAR's Second Am. Ans., Jul. 26, 2010 (Docket Entry No. 45).

Penn filed a motion for summary judgment on September 13, 2010.[5]  It seeks summary judgment on its own claims against Zertuche, namely that the Policy was cancelled effective October 20, 2008 and that it has no duty to indemnify Zertuche for the resulting loss.[6]  It also seeks summary judgment on Zertuche's cross-claims, arguing if the Policy was not validly cancelled, then Zertuche did not have an insurable interest under the Policy, and that no misrepresentation occurred relating to the alleged reinstatement of the Policy.[7]  Zertuche filed a response to Penn's motion on October 4, 2010,[8] and Penn filed a reply on October 15, 2010.[9]

Stoltz filed a motion for summary judgment on August 24, 2010 on all claims asserted against it by Zertuche, arguing that Zertuche had presented no evidence of any misrepresentations or promises made by Stoltz regarding the policy or the insurable interest at issue, that it was under no duty to contact Zertuche following the cancellation of the Policy, and that it is not an "insurer" under § 542.058 of the Texas Insurance Code.[10]  Zertuche filed a response to Stoltz's motion on September 27, 2010,[11] and Stoltz filed a reply on October 8, 2010.[12]

---

[5]Penn's Mot. for Summ. J., Sep. 13, 2010 (Docket Entry No. 57).

[6]*Id.*

[7]*Id.*

[8]Zertuche's Resp. to Penn's Mot. for Summ. J., Oct. 4, 2010 (Docket Entry No. 65).

[9]Penn's Reply to Zertuche's Resp. To Penn's Mot. for Summ. J., Oct. 15, 2010 (Docket Entry No. 67).

[10]Stoltz's Mot. for Summ. J., Aug. 24, 2010 (Docket Entry No. 54).

[11]Zertuche's Resp. To Stoltz's Mot. for Summ. J., Sep. 27, 2010 (Docket Entry No. 62).

[12]Stoltz's Reply to Zertuche's Resp. to Stoltz's Mot. for Summ. J., Oct. 8, 2010 (Docket Entry No. 66).

4

TAR also filed a motion for summary judgment on September 13, 2010 on all of Zertuche's claims, arguing that Zertuche had presented no evidence of any alleged misrepresentation or promise that the Policy would be reinstated upon payment of the back pay, that TAR has no duty to follow any customary practice, that Zertuche has presented no evidence of any misrepresentations regarding whether or not Zertuche had an insurable interest at the time of the sale of the Policy, that Zertuche has presented no evidence that TAR's acts or statements were the proximate cause of any damage or loss, and that TAR is not an "insurer" under the terms of the Texas Insurance Code.[13]  Zertuche filed a response on October 4, 2010,[14] and TAR filed a reply on October 15, 2010.[15]

<h3 style="text-align:center">Legal Standard</h3>

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict in favor of the nonmoving party.  *Anderson*, 477 U.S. at 248; *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).  A fact is "material" if its resolution in favor of one party might affect the outcome of the case.  *Anderson*, 477 U.S. at 248; *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 409 (5th Cir. 2002).

The burden is on the moving party to show that "there is an absence of evidence to support

---

[13]TAR's Mot. for Summ. J., Sep. 13, 2010 (Docket Entry No. 58).

[14]Zertuche's Resp. To TAR's Mot. for Summ. J., Oct. 4, 2010 (Docket Entry No. 64).

[15]TAR's Reply to Zertuche's Resp. to TAR's Mot. for Summ. J., Oct. 15, 2010 (Docket Entry No. 68).

the nonmoving party's case." *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir.

2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the moving party meets its initial burden, the nonmoving party "must . . . set out specific facts

showing a genuine issue for trial." FED. R. CIV. P. 56(e); *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th

Cir. 1994). To avoid summary judgment, the nonmoving party must adduce admissible evidence

that creates a fact issue concerning the existence of every essential component of that party's case

and unsubstantiated assertions of actual dispute will not suffice. *Thomas v. Price*, 975 F.2d 231, 235

(5th Cir. 1992). The opposing party cannot establish a genuine issue of material fact by resting on

the mere allegations of the pleadings. *Hulsey v. State of Texas*, 929 F.2d 168, 170 (5th Cir. 1991).

The Court reviews all facts in the light most favorable to the nonmoving party. *First Colony Life*

*Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

### Pending Claims

Zertuche alleges the following claims against Penn, Stoltz, and TAR:

1.  Negligence in misrepresenting to Zertuche that the Policy would be reinstated upon
    payment of the back premium;

2.  Negligence in failing to follow established custom and practice to notify Zertuche
    that the Policy was cancelled;

3.  Negligence in misrepresenting or withholding material facts at the time of sale of the
    Policy, if Zertuche had no insurable interest in the property;

4.  Violation of Texas Insurance Code § 541.061 by making misrepresentations relating
    to the Policy;

5.  Violations of the Deceptive Trade Practices Act ("DTPA"), Texas Business and

Commercial Code § 17.46(b):

    a.      Violation of § 17.46(b)(4) by causing confusion or misunderstanding as to the sponsorship, approval or certification of insurance services;

    b.      Violation of § 17.46(b)(5) by representing that goods or services have approval, characteristics, or benefits which they do not have;

    c.      Violation of § 17.46(b)(14) by misrepresenting the authority of a representative or agent to negotiate the final terms of a consumer transaction;

6.     Violation of Texas Insurance Code § 542.058 by unreasonably delaying payment of Zertuche's claim;

7.     Estoppel from denial of coverage based on promise to reinstate the Policy upon fulfillment of conditions with which Zertuche complied;

8.     Recovery of attorney's fees.

Penn seeks a declaratory judgment that:

1.  The Policy was cancelled effective October 20, 2008

2.  It has no duty to indemnify Zertuche for any losses resulting from the fire.

Zertuche alleges the following claims only against Penn:

1.     Breach of contract by failure to provide coverage for the fire loss;

2.     Negligence in failing to adequately supervise its agents;

3.     Liability for the conduct of Stoltz and TAR under agency theory.

**Analysis**

These claims fall into four categories: (1) claims arising from the alleged misrepresentation that the Policy would be reinstated upon submission of the outstanding back payment; (2) claims

7

arising from the dispute over whether Zertuche had an insurable interest in the Property; (3) claims arising from the alleged failure of the insurer parties to notify Zertuche that the Policy was cancelled; and (4) claims arising out of the contractual rights and obligations under the Policy between Penn and Zertuche.

## I.  MISREPRESENTATION THAT POLICY WOULD BE REINSTATED

Zertuche alleges that the three insurer parties were negligent in misrepresenting that the Policy would be reinstated upon Zertuche's remittance of the back payment.  In relation to this alleged misrepresentation, Zertuche asserts claims for common law negligence, violation of Texas Insurance Code § 541.061,[16] and violations of the DTPA,[17] and that the insurer parties should be estopped from denying coverage based on the alleged misrepresentation that coverage would be reinstated.

The DTPA authorizes suit where a consumer, including an insured, has relied in detriment on a false or misleading representation, and his reliance was a producing cause of damages.  *Brown*

---

The provision states:
"It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to misrepresent an insurance policy by:
1.    making an untrue statement of material fact;
2.    failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made;
3.    making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact;
4.    making a material misstatement of law; or
5.    failing to disclose a matter required by law to be disclosed, including failing to make a disclosure in accordance with another provision of this code."
TEX. INS. CODE. ANN. § 541.051 (West 2009).

[17]TEX. BUS. COMM. CODE § 17.46(b)(14) prohibits "misrepresenting the authority of a salesman, representative or agent to negotiate the final terms of a consumer transaction."  TEX. BUS. COMM. CODE ANN. § 17.46(b)(14) (West 2002).

*& Brown of Texas v. Transcontinental Ins. Co.*, 317 S.W.3d 361, 387 (Tex.App.-Houston [1st Dist.] 2010, pet. filed) (citing *Home Shield, Inc. v. Kortz*, 2000 WL 1262617, at *3 (Tex.App.-Houston [1st Dist.] 2000, pet. dism'd) (mem. op., not designated for publication)); *see* TEX. BUS. COMM. CODE ANN. § 17.46(b). In order to prove that the misrepresentation was an unlawful deceptive trade practice in violation of § 17.46(b), Zertuche must prove that he relied on the misrepresentation to his detriment. Section 541.151 of the Texas Insurance Code authorizes a private action by an insured for damages caused by violations of DTPA violations, as well as for violations of § 541.051 of the Code. TEX. INS. CODE. ANN. § 541.151(1),(2).

> Texas common law also recognizes a cause of action for negligent misrepresentation:
>
> One who in the course of his business, profession or employment, or in any transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance on the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Brown v. Brown*, 317 S.W.3d at 388 (quoting RESTATEMENT (SECOND) OF TORTS § 552 (1977)). In order to recover, the misrepresentation must have been the cause of the plaintiff's damages, and the plaintiff must have been justified in relying on it. *Id.* at 388-389. The cause element is met if the misrepresentation was a substantial factor in bringing about the plaintiff's injury, and the injury was a foreseeable result of the misrepresentation. *Id.* at 389 (citing *City of Gladewater v. Pike*, 727 s.W.2d 514, 517 (Tex. 1987)). The misrepresentation need not be the only cause of the injury, and circumstantial evidence is sufficient to prove causation. *Id.* (citing *Havner v. E-Z Mart Stores*, 825 S.W.2d 456, 458-59 (Tex. 1992)).

> Zertuche's complaint alleges that his secretary was informed by a representative of TAR that

the Policy would be reinstated if Zertuche sent a cashier's check for $259.45, along with a statement verifying no loss in the interim, by overnight mail.[18]  The evidence before the Court indicates that Zertuche did not personally speak with anyone, but that his secretary Lisette Briano received the instructions from TAR.[19]  She testified that she called TAR, and when asked specifically, she identified the 1-800 number listed on the invoice received from TAR on October 20, 2008 as the number she called.[20]  Zertuche has presented no other evidence of any conversations regarding the back payment.  Zertuche testified that Briano's October 21, 2008 telephone conversation is the only source of his allegations of misrepresentation regarding the back payment and reinstatement of the Policy.[21]  The evidence indicates that Zertuche mailed the $259.49 check overnight along with the no loss statement.[22]

The evidence also indicates that TAR mailed a notice to Zertuche on October 23, 2008 indicating that it had applied the payment to the Policy but that the Policy remained cancelled effective October 20, 2008.[23]  Zertuche's affidavit states that he never received this letter, and that he never received any refund of the unearned premium payment until after the fire occurred.[24]  Accordingly, there is an issue of material fact as to whether Zertuche, after mailing the back payment

---

[18]Zertuche's First Am. Countercl. and Third Party Compl. at 2.

[19]Deposition of Marcos Zertuche at 32:14-17 and 53:2-8 (May 20, 2010) (Ex. A to Stoltz's Mot.).

[20]Id. at 28:17-29:1, 81:13-82:16.

[21]Zertuche Dep. at 90:5-94:12.

[22]See Letter from TAR to Zertuche, Oct. 23, 2008 (Ex. G and H to Penn's Mot.).

[23]Id.

[24]Affidavit of Marcos Zertuche 3, Sep. 27, 2010 (Ex. A to Zertuche's Resp. to TAR's Mot.).

and no loss statement in accordance with the alleged instructions, ever received any notice that the Policy remained cancelled.

Zertuche represents that if the back payment had been returned or if he had been told by any insurer party that the Policy remained cancelled despite his sending the back payment, then he would have "taken whatever steps were necessary to maintain insurance on the property."[25]  The insurer parties have presented evidence that Zertuche failed to make his premium payments in November or December of 2008, and argue that this shows that he did not believe the Policy was still in force and thus did not rely on the promise.  Given the conflicting evidence on this point, the Court concludes that there remains a material issue of fact on whether Zertuche relied on the instructions from TAR to send the back payment and no loss statement by overnight mail, and whether his reliance was a producing cause of his inability to receive insurance coverage for the damage to the Property.

TAR argues that the alleged statement to Ms. Briano that "to reinstate the policy Zertuche needed to deliver a premium payment of 259.45 and a no loss statement,"is "merely a correct description of conditions precedent to reinstatement" and thus "would not constitute a promise to reinstate the policy or a representation that the policy would be or had been reinstated."[26]  TAR argues that it is therefore not an "actionable untrue statement."[27]  Aside from these arguments, however, TAR has submitted no evidence to establish that the instruction was an accurate and correct statement.

--------

[25]Zertuche Aff. at 3.

[26]TAR's Mot. for Summ. J. at 7-8.

[27]*Id.* at 8.

Because issues of material fact remain as to the truth of the statement, Zertuche's reliance, and causation, summary judgment is denied to TAR on these claims. No evidence before the Court indicates that Stoltz was in any way involved in the alleged misrepresentation. Accordingly, summary judgment is granted for Stoltz on these claims.

Penn's potential liability for claims arising from the alleged misrepresentation turns on whether it is vicariously liable for TAR's actions on agency principles. With regard to the Texas Insurance Code claims, the Code specifically defines who qualifies as an agent for the purpose of attributing liability for violations of code provisions. *See* TEX. INS. CODE ANN. § 4001.051. Section 4001.051(b) of the Code provides a list of persons who are considered to act as the agent of an insurer "for purposes of the liabilities, duties, requirements, and penalties provided" by the Code, "[r]egardless of whether the act is done at the request of or by the employment of an insurer, broker, or other person." *Id.* § 4001.051(b). The list includes anyone who "receives, collects, or transmits an insurance premium," *Id.* § 4001.051(b)(7) as well as anyone who "receives or transmits other than on the person's own behalf an application for insurance or an insurance policy to or from the insurer." *Id.* § 4001.051(b)(6). TAR received and processed premiums on the Policy on Penn's behalf, and Stoltz transmitted Zertuche's insurance application to Penn. Both therefore fall within the Code's definition of agent, and may attribute liability to Penn for any violations of code provisions, regardless of whether their acts were done at Penn's request or employment. Because TAR is an agent of Penn for purposes of the Texas Insurance Code, Penn is also potentially liable for TAR's violation of Section 541.061.

Penn's liability for the DTPA and common law negligence claims turns on whether TAR was acting in the actual or apparent scope of its authority as Penn's agent when it made the alleged

misrepresentation.  An insurer may be liable for the misconduct of its agent that falls within both the actual and the apparent scope of the agent's authority.  *Celtic Life Ins. Co. v. Coats*, 885 S.W.2d 96, 98-99 (Tex. 1994).  "Since the principal has selected the agent to act in a venture in which the principal is interested, it is fair, as between him and a third person, to impose upon him the risk that the agent may exceed his instructions."  *Id.* at 99 (quoting *Standard Distributors v. FTC*, 211 F.2d 7, 15 (2d Cir. 1954)).  Apparent authority exists when a reasonably prudent person would conclude from the principal's conduct that the agent had the requisite authority.  *Biggs v. United States Fire Ins. Co.*, 611 S.W.2d 624, 629 (Tex. 1981); *Guthrie v. Republic Nat'l Ins. Co.*, 682 S.W.2d 634, 637 (Tex.App.-Houston [1st Dist.] 1984, *writ ref'd n.r.e.*).  Penn does not seem to dispute that TAR was its agent, and in fact analyzes its potential liability for the alleged misrepresentation as if TAR was its agent and could bind it for liability purposes.[28]  Accordingly, summary judgment is also denied to Penn on these claims.

## II.  INSURABLE INTEREST

Penn moves for summary judgment that Zertuche has no insurable interest in the Property because he is not the title owner, and thus he could not make a claim under the Policy even if it had not been cancelled.[29]  Zertuche alleges that, if he had no insurable interest, then the insurer parties were negligent in misrepresenting or withholding material facts at the time the Policy was issued. He asserts claims of common law negligence, violation of Section 541.051 of the Texas Insurance

---

[28]Penn's Mot. at 16-18.

[29]Penn's Mot. at 14; TAR's Mot. at 5; Stoltz's Mot. at 9.

Code, and DTPA violations.[30]

It is not required to have legal title in a property in order to have an insurable interest in that property. *Jones v. Texas Pacific Indem. Co.*, 853 S.W.2d 791, 794 (Tex.App.-Dallas 1993, no writ). "[A]n insurable interest exists when the [insured] derives pecuniary benefit or advantage by the preservation and continued existence of the property or would sustain pecuniary loss from its destruction." *Id.* (quoting *Smith v. Eagle Star Ins. Co.*, 370 S.W.2d 448, 450 (Tex. 1963)). Legal ownership of property that is intended to be a partnership asset is not determined by legal title, but instead by the intention of the parties as reflected in the evidence. *Foust v. Old American County Mut. Fire Ins. Co.,* 977 S.W.2d 783, 786 (Tex.App. - Fort Worth 1998, no writ) (citing *Logan v. Logan*, 138 Tex. 40, 156 S.W.2d 507, 512 (Tex. 1941); *King v. Evans*, 791 S.W.2d 531, 533 (Tex.App. - San Antonio 1990, writ denied)).

The evidence before the Court suggests that the Property is owned either by Zertuche's mother as an individual, or by Zertuche Enterprises, but in either case for use and benefit of the Zertuche Enterprises partnership. In his deposition, Zertuche testified both that the Property is owned by the family partnership, Zertuche Enterprises, and that title to the property was in the name of his mother, Irma Zertuche.[31] He also testified that the Policy was in his name, that the other partners in Zertuche Enterprises consented to imposition of a lien on their partnership interests in order to secure a mortgage note on the Property in his name and his mother's name, and that

---

[30]The DTPA prohibits "causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services" and "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship approval, status, affiliation, or connection which he does not". TEX. BUS. COMM. CODE ANN. §17.46(b)(2), (5).

[31]Zertuche Dep. 102:1-104:19.

partnership documents reflect this consent.[32]   Zertuche is the managing partner of Zertuche Enterprises, and holds a 16.67 percent ownership interest in the partnership assets.[33]   This evidence indicates that the Property is either owned by Zertuche's mother or by Zertuche Enterprises, but in either case for the benefit of Zertuche Enterprises.  As such, Zertuche as stakeholder and managing partner would suffer pecuniary benefit from its preservation and pecuniary loss from its destruction.  Thus, there is at least a material issue of fact as to whether Zertuche had an insurable interest in the Property.

TAR and Stoltz also move for summary judgment on Zertuche's claims relating to the alleged misrepresentation of his insurable interest, arguing that Zertuche's damages were not caused by any alleged misrepresentations regarding his insurable interest.[34]   They argue that Zertuche's damages were caused by his failure to pay the premiums on the Policy such that the Policy was not in place to cover the destruction to the Property.  In other words, they argue that the sole cause of Zertuche's damages are his failure to timely pay his premiums.

In order to recover under the Texas Insurance Code and the DTPA, the alleged misrepresentation must have been a "producing cause" of the damages.  TEX. BUS. & COMM. CODE § 17.50(a); *Provident Am. Ins. Co. v. Castaneda*, 988 S.W.2d 189, 192-93 (Tex. 1998).  A producing cause is "an efficient, exciting, or contributing cause, which in a natural sequence, produced injuries or damages."  *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex. 1995) (quoting *Haynes & Boone v. Bowser Bouldin, Ltd.,* 896 S.W.2d 179 (Tex. 1995); *Rourke v. Garza,* 530 S.W.2d 794, 801

---

[32]*Id.*

[33]*Id.*

[34]TAR's Mot. at 9; Stoltz's Mot. at 9.

(Tex. 1975)).  Unlike with proximate cause, foreseeability of the injury is not a required element of producing cause.  *Union Pump Co. v. Allbritton*, 898 S.W.2d at 775 (citing *General Motors Corp. v. Saenz*, 873 S.W.2d 353, 357 (Tex. 1993)).

Under the Texas definition of producing cause, any alleged misrepresentations made about Zertuche's insurable interest would be a producing cause of his damages.  Had there been no Policy in place, Zertuche would never have been able to make a claim in the first place.  If Zertuche had been instructed that he had no insurable interest at the time he purchased the Property, then he may not have relied on his understanding, mistaken or otherwise, that he had coverage, and therefore would not have suffered the injury of receiving no coverage for the destruction of the Property.  Because there is an issue of material fact as to whether Zertuche had an insurable interest and whether any alleged misrepresentation caused his injuries, summary judgment is denied to all three insurer parties on these claims.

## III.  FAILURE TO NOTIFY OF CANCELLATION

Zertuche alleges that the insurer parties were negligent in "failing to follow their established custom and practice to notify Zertuche of the cancellation of the policy in question and the failure of his compliance with their demands to effect reinstatement."[35]  Specifically, Zertuche alleges that Stoltz failed to contact Zertuche to determine the status of the Policy after receiving a correspondence from TAR on October 23, 2008 that the Policy was cancelled, and that TAR was negligent in failing to timely return the unearned premium to Zertuche, which would have put him on notice that his Policy had been cancelled.[36]  Stoltz and TAR both argue that they had no duty to

---

[35]Zertuche's Am. Counterclaim at 4.

[36]*Id.*

16

inform Zertuche of the cancellation or change in status, and that even if they had such a duty it was not breached in this case.[37]

Texas law recognizes two common law duties that insurance agents have to insureds: (1) to use reasonable diligence to place the requested insurance coverage, and (2) to inform the insured if unable to obtain such coverage. *Webb v. UnumProvident Corp.*, 507 F.Supp.2d 668, 683 (W.D. Tex. 2005) (citing *May v. United Servs. Ass'n of Am.,* 844 S.W.2d 666, 669 (Tex. 1992)).  In addition, the facts and circumstances surrounding an agent's or a broker's dealing with an insured may give rise to additional duties beyond those two.  *Webb*, 507 F.Supp.2d at 683 (citing *Kitching v. Zamora,* 695 S.W.2d 553, 554 (Tex. 1985)).

The existence of any such duty depends on the facts surrounding the relationship between the insured and the agent or broker.  *Webb*, 507 F.Supp.2d at 683-684.  A long-term relationship with high levels of trust is necessary to establish that a "special relationship" exists warranting the imposition of a higher duty of care.  *See Webb*, 507 F.Supp.2d at 684-85 (holding there was a reasonable basis to conclude that a state court would impose a duty where agent and insured had a fourteen year business relationship, agent knew of insured's serious preexisting condition and her related need for disability benefits, agent was aware of content of insured's medical records and reports, and agent was aware that disability insurer had a history of wrongfully denying claims). Because such a special relationship is rare, many Texas courts have neglected to impose such a broader duty.  *See e.g. Critchfield v. Smith*, 151 S.W.3d 225, 231-32 (Tex.App.-Tyler 2004, pet. denied) (declining to extend duty "without evidence of prior dealings where the agent has taken care of a customer's needs without consultation."); *Moore v. Whitney-Vaky Insurance Agency,* 966

---

[37]Stoltz's Mot. at 15-16; TAR's Mot. at 14-15.

S.W.2d 690, 692 (Tex.App.-San Antonio 1998, no pet.) (denying an additional duty where agent requested to place insurance coverage during a buffet and the parties only communicated thereafter for simple annual renewal of the policy).

Here, the evidence before the Court establishes that there is no basis for imposing a higher duty on any of the Defendants based on any alleged relationship with Zertuche. Zertuche used Stoltz to find insurance coverage for only one of the approximately twelve properties he manages for Zertuche Enterprises, as well as his office building and his personal automobile.[38] The Policy was written as a direct bill, such that Stoltz was not involved in the invoicing, receipt, or processing of any premium payments; TAR billed Zertuche directly for monthly premiums, and Zertuche made all premium payments directly to TAR.[39] Accordingly, there are no facts indicating that Stoltz owed any special duty to Zertuche based on custom and practice, and summary judgment is granted to Stoltz on this claim.

Zertuche's contact with TAR was significantly more involved than that with Stoltz, however, it still falls short of the level that would impose a higher duty on TAR. The evidence indicates that Zertuche failed to make several premium payments over the life of the Policy.[40] In response, TAR sent out corresponding Notices of Cancellation, Zertuche called TAR to find out the amount due, and he then made the outstanding premium payments.[41] Once these late payments had been received

---

[38]Zertuche Dep. 14:10-13, 106:9-12; Deposition of Brenda Miller at 21:13-22:4 (Jul. 13, 2010) (Ex. B to Stoltz's Mot.).

[39]*Id.* at 21:1-9; Zertuche Dep. Exhibit 3 (Ex. F to Stoltz's Mot.).

[40]Zertuche Dep., 29:7-30:15; Zertuche Dep. Exhibit 7 (Notices of Cancellation).

[41]*Id.*

and processed, TAR sent Reinstatement Endorsements.[42] Zertuche has submitted no evidence of any communication with TAR about the details of his policy, nor of any interaction aside from the standard processing of payment and exchange of paperwork when he failed to make a timely payment. The fact that TAR had sent out reinstatement endorsements in the past does not create a duty to continue doing so in the future. This evidence is insufficient to establish any special relationship or any further duty beyond the two standard duties owed by agents to insureds. Accordingly, summary judgment is also granted to TAR on this claim.

Finally, Zertuche has presented no evidence that he had any direct contact with Penn America throughout the life of the Policy, let alone sufficient contact to create any suggest that Penn had any duty to contact Zertuche based on past custom and practice. Accordingly, summary judgment is also granted to Penn on this claim.

## IV. CLAIMS BETWEEN PENN AND ZERTUCHE

### A. Penn Has No Duty to Indemnify For the Loss

Penn moves for a declaratory summary judgment that it had cancelled the Policy for non-payment of premium prior to the time of the loss, pursuant to the terms of the Policy and in compliance with the Texas Insurance Code, and thus that it has no duty to indemnify Zertuche for the loss.[43] Zertuche argues that principles of waiver and estoppel prevent the Court from granting summary judgment to Penn on this issue.[44]

It is undisputed that Zertuche's October 2008 premium installment payment check was

---

[42]Zertuche Dep. 30:25-31:23; Zertuche Dep. Exhibit 8 (Reinstatement Endorsement).

[43]Penn's Mot. at 8.

[44]Zertuche's Resp. to Penn's Mot. at 6.

returned for insufficient funds.[45]   TAR sent a Return Check Notice to Zertuche stating that the payment had not been applied and that the insurance may be cancelled without any further notice.[46] On October 9, 2008, TAR sent a Notice of Cancellation to Zertuche and International Bank of Commerce ("IBC"), the mortgage lienholder, and sent a copy to Stoltz, stating that the Policy would be cancelled on October 20, 2008 for non-payment of the premium.[47]   The Policy was cancelled effective October 20, 2008.

The evidence indicates that Penn cancelled the Policy in accordance with all applicable laws and regulations.   The Texas Insurance Code and the Policy itself both require that 10 days notice be given to the insured before cancellation of the Policy.   TEX. INS. CODE. ANN. §§ 551.053, 551.104(e). The Code also requires that notice be sent to the first named insured as well as the mortgagee of the property.   TEX. INS. CODE. ANN. §§ 551.053, 862.055; *Standard Fire Ins. Co. v. United States of America*, 407 F.2d 1295, 1300 (5th Cir. 1969).   Zertuche has presented no evidence to dispute that notice was properly issued ten days before the cancellation, to both Zertuche as named insured and IBC as mortgagee.

The only remaining issue is whether the doctrines of waiver or estoppel apply to prevent Penn from enforcing its cancellation of the Policy.   Under Texas law, "any act, declaration, or course of dealing by the insurer, with knowledge of the facts constituting a cause of forfeiture or breach of a condition in the policy, which dealings recognize and treat the policy as still in force, and leads the insured to regard himself as protected, will amount to a waiver of the forfeiture. . .Thus the insurer

---

[45]Penn's Mot. at 4; Zertuche's First Am. Orig. Counterclaim and Third Party Compl. ¶ 3.

[46]Return Check Notice, Oct. 8, 2008 (Ex. D. to Penn's Mot.).

[47]Notice of Cancellation, Oct. 9, 2008 (Ex. E to Penn's Mot.).

will be estopped to insist upon the forfeiture..." *Preferred Risk Mut. Ins. Co. v. Rabun*, 561 S.W.2d 239, 240 (Tex. Civ. App. - Austin 1978, writ dism'd).  An insured must prove three elements to establish that an insurer has waived forfeiture: (1) the insurer has knowledge of the facts constituting forfeiture, (2) the forfeiture is complete and absolute, and (3) an unequivocal act on the insurer's part that recognize the continuance of the policy, or is wholly inconsistent with forfeiture.  *Id.* at 242-243 (citing *Bailey v. Sovereign Camp, W.O.W.,* 286 S.W.2d 456, 457 (Tex. 1926)).

Zertuche argues that Penn accepted a late payment from Zertuche, and therefore was prohibited from forfeiting the Policy due to late payment or non-payment of the premium.[48]  He further argues that TAR is an agent for Penn, and TAR gave Zertuche instructions about reinstatement of the Policy which he in turn relied upon.[49]  Although there is no evidence that Penn had any actual knowledge of the instructions given by TAR, an insurer may be bound in this context by the actions, conduct, or knowledge of a duly authorized representative acting within the scope of its actual or apparent agency authority.  *Rabun*, 561 S.W.2d at 243.

Notably, the requirement of an unequivocal act makes this standard for waiver or estoppel of an insurer's rights distinct and somewhat more difficult to establish than that required to separately establish liability based on the alleged misrepresentation by the insurer's agent.[50]  TAR's alleged instruction did not amount to an unequivocal act, but merely a statement of a condition.  At the time, the TAR representative did not know whether Zertuche would or would not comply.  After Zertuche submitted the check, neither Penn nor TAR ever confirmed to Zertuche that the Policy

---

[48]*Id.*

[49]*Id.*

[50]*See supra* Part I.

remained in place.  In contrast, TAR sent a letter expressing the opposite, that the Policy remained cancelled, although Zertuche claims never to have received this letter.  Accordingly, Zertuche fails to establish waiver because there is no evidence of any unequivocal act by Penn that is inconsistent with forfeiture or that recognizes continuance of the Policy.  *See id.* at 242-243 (citing *Bailey,* 286 S.W.2d at 457).  Penn's potential vicarious liability for the action of its agent do open it to potential liability on other claims, but do not amount to an "unequivocal act."

Furthermore, after the alleged October 21, 2008 conversation with TAR's representative, there is no evidence that Zertuche attempted to discover any further information regarding whether or not the Policy was cancelled.  After sending in his past due October premium payment, Zertuche did not follow up with any insurer party to confirm the status of cancellation or reinstatement.[51] Zertuche did not receive invoices for November or December premiums on the Policy, nor did he make any attempt to pay those premiums according to the Policy schedule.  Having received no notice of reinstatement and no invoices for subsequent premium payments, both of which should have put him on notice that the Policy was still cancelled, Zertuche failed to make any effort to determine whether his back payment of the October premium had resulted in reinstatement of the Policy.  Although Zertuche may have other claims based on TAR's alleged instruction regarding reinstatement, these do not amount to his ability to turn a blind eye to the terms of the Policy. Because there is no evidence of any unequivocal act that Penn waived its rights to cancel the Policy, summary judgment is granted in favor of Penn on this claim.

---

[51]Zertuche Dep. 53:2-8.

**B.  As Penn Has No Duty to Indemnify, It Did Not Breach the Contract**

Penn argues that it cannot be liable for breach of contract for failing to provide coverage, because it had properly cancelled the Policy prior to the time of loss.[52]  As noted above, the Court finds that a declaratory judgment is warranted on Penn's claim that it had no duty to indemnify Zertuche for the loss resulting from damage to the Property.  Accordingly, Penn could not have breached the contract by failing to indemnify Zertuche for the loss.  Summary judgment is granted to Penn on this claim.

**C.  Prompt Payment Provision of Texas Insurance Code § 542.058**

Zertuche claims that the Defendants unreasonably delayed payment of his claim in violation of Section 542.058 of the Texas Insurance Code  The provision only applies to "insurers" as defined by the Code.[53]  TEX. INS. CODE. § 542.058 (prohibiting "an insurer" from delaying payment). Separate provisions apply to "agents" of insurers, as defined by Section 4001.051 of the Code.  TEX. INS. CODE ANN. § 4001.051.  As noted above, Stoltz and TAR are both "agents" rather than "insurers" under the terms of the Code.[54]  Thus, the prompt payment provision contained in §542.058 does not apply to Stoltz or TAR.  Summary judgment is granted in favor of Stoltz and TAR on this claim.

It is undisputed that Penn is the insurer on the Policy, and thus it is subject to the prompt payment provision contained in §542.058.  However, as noted, the Court has determined that Penn

---

[52]Penn's Mot. at 14-15.

[53]The Code defines "insurer" to include a number of entities including " a life, health, or accident insurance company and "a fire or casualty insurance company".  TEX. INS. CODE ANN. § 542.002.

[54]*Supra* Part I; *see* TEX. INS. CODE ANN. § 4001.051(2),(5).

23

had no duty to pay for the damage caused to the Property, because the Policy was no longer in force by the date that the fire occurred.  Accordingly, summary judgment is also granted to Penn on this claim.

## D.  Negligent Supervision of Agents

Zertuche also alleges that Penn was negligent in supervising its agents.  A person or entity conducting activity through an agent may be liable if he negligently supervises the agent or fails to make proper regulations regarding the activities performed by the agent in his agency capacity. *Great American Life Ins. Co. v. Lonze,* 803 S.W.2d 750, 753 (Tex.App.-Dallas 1990) (citing RESTATEMENT (SECOND) OF AGENCY § 213 (1958)).  The Court has already concluded that Penn may be vicariously liable for the negligence of Stoltz and TAR on agency principles.  However, negligent supervision of agents is a separate cause of action, and liability can be established only if all the requirements of a negligence tort are independently present.  RESTATEMENT (SECOND) OF AGENCY § 213©)).  There is no evidence before the Court of any additional duty to give instructions or otherwise supervise either TAR or Stoltz, or any failure of such duty.  Accordingly, summary judgment is granted to Penn on this claim.

### Conclusion

In accordance with the foregoing, summary judgment on all three motions is GRANTED IN PART and DENIED IN PART.  Summary judgment is GRANTED to Stoltz and DENIED to TAR and Penn on claims arising from the alleged misrepresentation that the Policy would be reinstated upon submission of the outstanding back payment.  Summary judgment is also GRANTED to Penn on Zertuche's claim that Penn negligently supervised its agents.  Summary judgment is DENIED to Penn, Stoltz, and TAR on all claims arising from the dispute over whether Zertuche had an insurable

interest in the Property.  Summary judgment is GRANTED to Penn, Stoltz, and TAR on all claims arising from the alleged failure of the insurer parties to notify Zertuche that the Policy was cancelled. Summary judgment is GRANTED to Penn on Penn's declaratory judgment that it owes no duty to indemnify Zertuche, on Zertuche's breach of contract claim and, and Zertuche's claim that Penn violated the prompt payment statute of the Texas Insurance Code.

Accordingly, the following of Zertuche's counter- and third party claims remain: (1) as to all TAR and Penn (by vicarious agency liability for TAR's actions), negligence in misrepresenting to Zertuche that the Policy would be reinstated upon payment of the back premium; (2) as to all parties, negligence in misrepresenting or withholding material facts at the time of sale of the Policy, if Zertuche had no insurable interest in the property; (3) as to all parties, violations of Texas Insurance Code § 541.061 by making misrepresentations relating to the Policy, both as to the insurable interest and the misrepresentation regarding reinstatement; and (4) as to all parties, violations of the Deceptive Trade Practices Act ("DTPA"), Texas Business and Commercial Code §§ 17.46(b)(4),(5), and (14), both as to the insurable interest and the misrepresentation regarding reinstatement.

It is so ORDERED.

SIGNED this 20th day of January, 2011.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE